UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF
MASSACHUSETTS,

          Plaintiff,

          v.

CHET'S WRECKING & AUTO PARTS
COMPANY, INC.,

          Defendant.

Case No. 1:23-cv-10263

**CONSENT DECREE**

WHEREAS, Chet's Wrecking & Auto Parts Company, Inc. ("Chet's") operates an automobile salvage yard and scrap metal recycling facility at 1571 Page Boulevard, Springfield, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Chet's has discharged industrial stormwater from the Facility through the City of Springfield's municipal separate storm sewer system into Bircham Bend Brook, a tributary of the Chicopee River, without registering under and complying with a federal Multi-Sector General Permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. §1331(a), *et seq.* (the "Clean Water Act" or "the Act");

WHEREAS, by letter dated October 29, 2021, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit

1

against Chet's ("Notice") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to Chet's, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

WHEREAS, Chet's has prepared a Stormwater Pollution Prevention Plan ("SWPPP") and submitted a Notice of Intent to be covered by the Stormwater Permit;

WHEREAS, today the Attorney General filed a complaint against Chet's in the United States District Court, District of Massachusetts (the "Complaint");

WHEREAS, Chet's does not admit any liability arising out of the facts or laws referenced or alleged in the Notice or Complaint;

WHEREAS, the Commonwealth and Chet's (collectively, the "Parties") have reached an agreement to fully resolve this dispute; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

### III. EFFECTIVE DATE

3. The effective date of this Consent Decree shall be when the Court enters the Consent Decree on the docket ("Effective Date").

### IV. PARTIES BOUND

4. This Consent Decree shall constitute a binding agreement between the Parties, and Chet's consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Chet's agree otherwise in writing within fourteen (14) days of the Court's decision.

5. The provisions of this Consent Decree shall apply to and bind Chet's and any person or entity acting by, for, or through Chet's, including Chet's' managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with Chet's who receive notice of this Consent Decree.

6. Chet's shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Chet's shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and

shall condition any such contract, entered into after the Effective Date of the Consent Decree, on the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, Chet's shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

7.     For two (2) years following the Effective Date, Chet's shall provide written notice of any prospective change or transfer in ownership of its business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within two (2) years following the Effective Date, Chet's shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendant or its managers, officers, directors, agents, successors, assigns, heirs, and/or servants of any obligation under this Consent Decree, unless:

   a.     the transferee agrees, in writing, to undertake any outstanding obligations required by Section V (Payments), Section VI (Injunctive Relief), and Section VII (Facility Access and Submission of Records) and to be added as a Defendant or substituted for the Defendant as a Party under the Consent Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

   b.     the Commonwealth agrees to consent, in writing, to relieve the Defendant of its obligations under the Consent Decree; and

c.  the transferee becomes a party under this Consent Decree pursuant to Section XV (Modification).

Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

8.  Chet's shall not violate this Consent Decree, and Chet's shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Chet's shall not raise as a defense the failure by any of Chet's' managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.  In addition to any relief specifically provided in this Consent Decree, Chet's understands and agrees that violations of this Consent Decree may by punishable by contempt pursuant to an appropriate civil contempt proceeding.

## V. PAYMENTS

10.  Within fifteen (15) days of the Effective Date, Chet's shall pay to Partners for a Healthier Community, d/b/a Public Health Institute of Western Mass the sum of thirty thousand dollars ($30,000) to help train community residents in water quality testing and analysis. The payment will also be used to perform water quality testing by the trained community residents at locations in the Chicopee River Watershed, to analyze the results of the testing, and to share the results and analysis with members of the Hampden County community. The training will address the broader context in which the testing and analysis will occur. Evidence of Chet's' payment to Partners for a Healthier Community, d/b/a Public Health Institute of Western Mass shall be contemporaneously provided by Chet's to the Commonwealth pursuant to Section XIII

5

(Notices). Payments should be made by wire transfer referencing this action to the following account:

Partners for a Healthier Community, d/b/a Public Health Institute of Western Mass



Reference: EPD, Commonwealth v. Chet's – Payment

11.     Within five (5) days of the Effective Date, Chet's shall reimburse the Attorney General's Office in the amount of twenty-five thousand dollars ($25,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General



Reference: EPD, Commonwealth v. Chet's – Costs

### VI. INJUCTIVE RELIEF

12.     Chet's agrees to operate the Facility in compliance with the applicable requirements of the currently applicable Stormwater Permit, including any amendments thereto or reissuances thereof, and with the Federal Clean Water Act. Specifically, Chet's shall:

    a.     control stormwater at the Facility to "minimize" pollutants, that is, "to reduce and/or eliminate to the extent achievable using stormwater control measures (SCMs) (including best management practices) that are

technologically available and economically practicable and achievable in light of best industry practice," pursuant to Stormwater Permit Section 2.0;

b.   monitor Stormwater Discharges Associated with Industrial Activity through the Outfalls identified and described in Chet's' Notice of Intent and SWPPP. *See* Stormwater Permit Section 4. All reporting of monitoring results shall be certified by an authorized person, in compliance with Section G of Appendix M of the 2021 Stormwater Permit. In addition to the Stormwater Permit requirements, Chet's shall prepare video recordings of the sampling events occurring during the first full quarter, as set forth in Stormwater Permit Section 4.1.7, after the Effective Date for its stormwater discharges into catch basins on Rocus Street, to the extent observable, and shall provide the Attorney General's Office with copies of such video recordings in accordance with Section XIII (Notices), below. The video recordings shall include an accurate record of the time and date on which they were recorded. Each video shall make clear and evident, through visual imagery:

> (a)   the date and time on which it was recorded,
>
> (b)   the location or locations at which it was recorded,
>
> (c)   the persons present during the sampling,
>
> (d)   the location of the pipe or conduit being sampled from,
>
> (e)   the manner in which each sample is taken, and
>
> (f)   the sample or samples taken.

If the video imagery is insufficient to verify items (a)-(f) above, then the Attorney General's Office will have the right to be present during or require the video recording of another representative sampling event in a subsequent calendar quarter of its choosing.

## VII. FACILITY ACCESS AND SUBMISSION OF RECORDS

13. Chet's shall permit the Attorney General's Office to visit the Facility during normal daylight business hours for two (2) years following the Effective Date, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any Facility visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be maintained pursuant to the Stormwater Permit and may collect samples and take photos at the Facility.

14. For a period of two (2) years following the Effective Date, Chet's shall provide the Attorney General's Office with the following documents in accordance with Section XIII (Notices), below:

      a. copies of all documents Chet's submits to EPA, the Commonwealth, and/or the City of Springfield concerning Chet's' stormwater controls or the quality of Chet's' Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

      b. all maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of Chet's receipt of a written request by the Attorney General's Office;

    c.    all written material, including Power Point presentations, associated with any trainings referenced in the Company's SWPPP. Training materials will be provided within ten (10) business days of Chet's' receipt of a written request by the Attorney General's Office;

    d.    written notice of any changes made to any of Chet's stormwater control measures that are described in the SWPPP pursuant to Stormwater Permit Section 6.2.4, within two (2) weeks of completion;

    e.    written notice of any changes made to Chet's' stormwater control measures pursuant to Stormwater Permit Section 6.3, within two (2) weeks of completion;

    f.    current copies of Chet's' SWPPP within three (3) business days of receipt of a written request by the Attorney General's Office; and

    g.    laboratory reports and analytical results of stormwater sampling performed by or for Chet's within ten (10) business days of receiving the reports.

15.    Any information provided by Chet's may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

16.    The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Chet's to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTERESTS AND COLLECTIONS

17.     If any payment required pursuant to this Consent Decree is late or not made, Chet's shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all reasonable expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

18.     Upon compliance by Chet's with the requirements of this Consent Decree, (a) this Consent Decree shall fully resolve Chet's' liability for the specific legal claims alleged against it in the Notice and Complaint, and (b) the Commonwealth shall fully release Chet's from liability for the specific legal claims alleged against it in the Notice and Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

19.     Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Chet's, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

20. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Chet's is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Chet's' compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Chet's' compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

21. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

## XII. MISCELLANEOUS

22. Chet's understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Chet's may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

23. Chet's shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it.

24. Nothing in this Consent Decree shall prevent Chet's from taking any action otherwise required by law.

25. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

26. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

27.     Chet's is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

28.     Signature of the parties transmitted by scanning and email are binding.

## XIII. NOTICES

29.     Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

> For the Attorney General's Office and the Commonwealth:
>
> Emily Mitchell Field, Assistant Attorney General
> Environmental Protection Division
> Office of the Attorney General
> One Ashburton Place, 18th Floor
> Boston, MA 02108
> Emily.Field@mass.gov
>
> For Chet's:
>
> Michael L. Miller
> Wiggin and Dana LLP
> One Century Tower
> 265 Church Street, 17th Floor
> New Haven, CT 06510
> mmiller@wiggin.com
>
> Sergey Privedenyuk, President
> Chet's Wrecking & Auto Parts Company Inc.
> 1571 Page Boulevard
> Springfield, MA, 01104
> chets1571@gmail.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

## XIV. INTEGRATION

30.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of

12

the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XV. MODIFICATION

31.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph. Minor modifications of the preliminary plans attached hereto shall not constitute a material change for purposes of this Paragraph.

## XVI. AUTHORITY OF SIGNATORY

32.     The person signing this Consent Decree on behalf of Chet's acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that they are authorized to sign and bind Chet's to the terms of this Consent Decree, and (c) that, to the extent necessary, Chet's' managers, directors, officers, and shareholders have consented to Chet's entering this Consent Decree and to its entry as a Final Judgment.

## XVII. RETENTION OF JURISDICTION

33.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

34.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a Final Judgment of the Court.

OFFICE OF THE ATTORNEY GENERAL
ANDREA JOY CAMPBELL, ATTORNEY GENERAL

By: *EField*                          Date: 2/1/2023

Emily Mitchell Field
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2207
Emily.field@mass.gov


CHET'S WRECKING & AUTO PARTS COMPANY, INC.

By: _____              Date: 1/20/2023

Sergey Privedenyuk, President
Chet's Wrecking & Auto Parts Company Inc.
1571 Page Boulevard
Springfield, MA, 01104
(413) 543-3247
chets1571@gmail.com


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court: _____

_____
United States District Court

Dated: _____4/11/23_____

14